IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

STEPHANIE JO SIDES,            )
                               )
          Plaintiff,           )
                               )
                               )  Case No. CIV-20-246-RAW-KEW
                               )
COMMISSIONER OF THE SOCIAL     )
SECURITY ADMINISTRATION,       )
                               )
          Defendant.           )

**REPORT AND RECOMMENDATION**

Plaintiff Stephanie Jo Sides (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 31 years old at the time of the ALJ's decision. She has an eleventh-grade education and no past relevant work. She alleges an inability to work beginning on October 18, 2017, due to limitations resulting from depression, anxiety, bipolar disorder, and being a slow learner.

### Procedural History

On October 18, 2017, Claimant protectively filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. Her application was denied initially and upon reconsideration. On May 28, 2019, ALJ Doug Gabbard, II, conducted a hearing, at which

Claimant was present and testified. On June 26, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on May 18, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with additional non-exertional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) ignoring significant medical source opinions from consultative examiners; (2) failing to properly assess and properly account for the mental RFC; and (3) failing to sustain his burden at step five, as the RFC determination was inconsistent with the vocational expert's (VE) testimony and remand is required for resolution of the significant number inquiry.

### Medical Opinion Evidence

In his decision, the ALJ found Claimant suffered from severe impairments of borderline intellectual functioning, depression, bipolar disorder, anxiety, and obsessive-compulsive disorder. (Tr.

4

12). He determined Claimant could perform a full range of work at all exertional levels, but with non-exertional limitations. Claimant could perform a "full range of unskilled work which is simple, repetitive and routine (and where there are only one or two step tasks required or the job only requires a reasoning level of one)[.]" Claimant's supervision had to be "simple[,] direct, concrete and uncritical[,]" and her interpersonal contact with supervisors and co-workers had to be incidental to the work performed. She would do best in "a well-spaced work setting with few familiar co-workers or where she could frequently work alone." Claimant could not be required to work at fast-paced production line speeds and could only have "occasional, gradually-introduced workplace changes[.]" Claimant was to have regular work breaks and no contact with the general public. (Tr. 15).

After consultation with the VE, the ALJ determined Claimant could perform the representative jobs of industrial cleaner and power screwdriver operator, both of which the ALJ found existed in sufficient numbers in the national economy. As a result, the ALJ concluded Claimant had not been under a disability since October 18, 2017, the date the application was filed. (Tr. 18).

Claimant asserts the ALJ ignored the opinions of mental consultative examiners B. Todd Graybill, Ph.D., and Theresa Horton, Ph.D., when assessing the persuasiveness of the opinion evidence. The medical opinion evidence in this case is subject to

5

evaluation pursuant to 20 C.F.R. § 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. § 416.920c(a). Instead, he must "articulate" in his decision "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. § 416.920c(b); 20 C.F.R. § 416.920c(c). The most important factors are supportability and consistency, and the ALJ must explain how both were considered. *See* 20 C.F.R. § 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Regarding Dr. Graybill, he examined Claimant on August 11, 2011, over six years prior to the date Claimant filed her application. Claimant argues the ALJ should have considered Dr. Graybill's opinions that her "social skills were shy and naïve[,]" that she obtained a Verbal IQ of 69, a Performance IQ of 79, and a Full-Scale IQ of 72 on the WAIS-III – placing Claimant in the

borderline range of intellectual functioning, that Dr. Graybill believed the testing was a valid representation of Claimant's current intellectual abilities, that her attention span and concentration abilities were impaired commiserate with her overall intellectual level, and that she was not capable of managing her own benefits. (Tr. 304-305).

There is no error by the ALJ for not specifically discussing the evaluation by Dr. Graybill. First, the ALJ indicated that even when not "explicitly discussed," he considered "the entire medical record." (Tr. 17). Moreover, the ALJ was not required to discuss every piece of evidence. *See generally, Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (finding ALJ is not required to discuss every piece of evidence in the record). Second, the ALJ specifically discussed the opinions of the reviewing psychologists, which he found persuasive. Jason Gunther, Ph.D., reviewed the record in March of 2018, including Claimant's examination by Dr. Graybill from 2011, and determined Claimant had the mental RFC to perform simple tasks of one to two steps with routine supervision, could interact appropriately with co-workers and supervisors for incidental work purposes, should avoid contact with the public, and could adapt to a work setting and some forewarned changes in a usually stable work setting. (Tr. 17, 76-80). On reconsideration of her application, William Farrell, Ph.D., reviewed the record in June of 2018, including Claimant's

7

examination by Dr. Graybill, and agreed with the earlier limitations imposed by Dr. Gunther. (Tr. 17, 93-98).

Third, many of Dr. Graybill's findings are not inconsistent with the ALJ's RFC assessment. The ALJ determined Claimant had a severe impairment of borderline intellectual functioning and included functional limitations in the RFC consistent with Dr. Graybill's conclusions. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When an ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."). Although Dr. Graybill indicated Claimant's attention span and concentration were impaired commiserate with her overall intellectual level, he also noted she could understand, retain, and follow simple instructions. In the RFC, the ALJ determined Claimant could perform unskilled work which was "simple, direct, and routine (and where there are only one or two step tasks required or the job only requires a reasoning level of one)." He also found Claimant could "not be required to work at fast-paced production line speeds." (Tr. 15). Regarding Dr. Graybill's finding that Claimant's social skills were "shy and naïve," the ALJ included limitations that Claimant's interpersonal contact with supervisors and co-workers was incidental to the work performed, Claimant would do best in a well-spaced work setting with few familiar co-workers or where she

8

could frequently work alone, and she was to have no contact with the general public. (Tr. 15).

Finally, the ALJ was not required to discuss Dr. Graybill's opinion that Claimant was not capable of managing her own benefits. Dr. Graybill did not suggest that Claimant's ability to work was related to her ability to manage benefits. *See Jimison v. Colvin*, 513 Fed. Appx. 789, 794 (10th Cir. 2013) (discussing opinion that the claimant was incapable of managing benefits in her own best interest and finding that "Dr. Kent offered no opinion on how this would affect Ms. Sim's ability to work, nor is it evident from the record. The ALJ was not required to discuss it.").

Regarding Dr. Horton, she first examined Claimant in March of 2014. From that assessment, Claimant argues the ALJ should have considered Dr. Horton's opinions that beyond taking care of her young children with help from her mother, working on a full-time and permanent basis would be very difficult for Claimant, she would likely require one-on-one training to learn even simple new tasks, and she was not capable of managing benefits if awarded. (Tr. 317-19).

The ALJ, however, discussed the mental status examination of Claimant by Dr. Horton from September of 2015. Dr. Horton concluded Claimant appeared capable of understanding, remembering, and managing mostly routine, simple instructions and tasks while managing them. Claimant's pace was described as "somewhat slow,"

9

which "likely affects her level of productivity." Dr. Horton indicated that Claimant "likely would not adjust well into areas that are fast paced and/or densely populated." (Tr. 322-25). The ALJ found Dr. Horton's opinion persuasive, noting it was consistent with Claimant's testimony and the medical evidence. (Tr. 17).

This Court finds no error with the ALJ's treatment of Dr. Horton's 2014 opinion. As noted previously regarding Dr. Graybill's opinion, Dr. Horton's opinion that Claimant was incapable of managing benefits was not something the ALJ was required to discuss. *See Jimison v. Colvin*, 513 Fed. Appx. at 794. Moreover, the ALJ was not required to discuss Dr. Horton's opinion that it would be difficult for Claimant to work on a full-time and permanent basis beyond taking care of her young children with help from her mother, because it lacked the necessary probative value. *See, e.g., Jimison*, 513 Fed. Appx. at 794 (finding the doctor's opinion that it was "not clear whether [Ms. Sims] could persist on an ongoing, day to day basis, without relapse[,]" was "too indefinite to be of probative value [and] [t]he ALJ was not required to address it specifically in his decision."). Further, Dr. Horton's finding that Claimant would likely require one-on-one training did not include an assessment by Dr. Horton of specific functional limitations for Claimant. *See Paulsen v. Colvin*, 665 Fed. Appx. 660, 666 (10th Cir. 2016) ("But Dr. Valette did not assign any functional limitations to Ms. Paulsen other

10

than to mention that Ms. Paulsen '*probably* has difficulty with concentration and remembering because of attention problems.' Accordingly, the ALJ was not required to consider Dr. Valette's opinion in formulating Ms. Paulsen's RFC.") (emphasis in original).

### RFC Assessment

Claimant also contends that the ALJ's RFC "is vague, and it is not consistent with competitive, remunerative, and unskilled work." Plaintiff's Opening Brief, pp. 9-11 (Docket Entry #16). She specifically argues that the determination that her supervision must be "uncritical" is inconsistent with the ability to "respond appropriately to supervision . . and usual work settings" and would require that an accommodation be made.

The ALJ provided the VE with a hypothetical for an individual that could perform a full range of unskilled work which is simple, repetitive, and routine with only one or two step tasks and a reasoning level of one. Claimant's supervision would be "simple, direct, concrete and uncritical." Contact with supervisors and co-workers would be incidental to the work performed, such as assembly work. Claimant would do best in "a well-spaced work setting with a few familiar coworkers or where she [could] frequently work alone." She could not be required "to work at fast-paced production line speeds[,] she [could] have only occasional, gradually-introduced workplace changes[,] she must have normal[,] regular

work breaks[,] and she [could] have no contact with the general public[.]" (Tr. 61-62). In response to the hypothetical, and without questioning the ALJ's hypothetical in any way, the VE testified Claimant could perform the jobs of industrial cleaner and power screwdriver operator. (Tr. 62). The VE testified her testimony was consistent with the *Dictionary of Occupational Titles* (DOT), except her testimony regarding breaks, absenteeism, being off task, extra supervision, and not doing fast-paced work, was based upon her knowledge of the jobs and the requirements of competitive work over the past twenty years.  (Tr. 56).

There is no error in the ALJ's inclusion of a limitation for "uncritical" supervision in the RFC. The ALJ included the term "uncritical" in the hypothetical question to the VE, and the VE responded to the hypothetical indicating there were jobs in the national economy that Claimant could perform. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 1993) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

### Step Five Determination

Claimant further asserts that she cannot perform the power screwdriver operator job identified by the VE because it is classified as light work and requires fast-paced production line

speeds, which the ALJ specifically precluded in the RFC determination. She contends that the VE's identification of the job is inconsistent with the description of the job in the DOT, and the VE failed to resolve the conflict. The job description for power screwdriver operator does not specifically state that it requires the job be performed at a "fast pace" or "production pace," but it generally includes guidelines for when jobs requiring a negligible amount of weight lifted should be classified as light work. One of the distinctions is when it "requires working at production rate pace entailing constant pushing and/or pulling of materials even though the weight of those materials is negligible." DOT 699.685-026, 1991 WL 678865.

In any event, even if the VE's testimony is inconsistent with the DOT for the power screwdriver position, the VE also testified Claimant could perform the job of industrial cleaner. Claimant acknowledges this, but she argues that when the number of power screwdriver jobs are eliminated, there are not enough remaining industrial cleaner jobs available in the national economy to be significant. The VE testified there are 43,000 industrial cleaner jobs available in the national economy. (Tr. 62).

"[T]he issue of numerical significance entails many fact-specific considerations requiring individualized language as applied to a particular claimant's factual situation." *Allen v.*

13

*Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004), quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). "[T]he number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy-not just a local area." *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (citation omitted). Here, Claimant relies upon the case of *Norris v. Barnhart*, 197 Fed. Appx. 771 (10th Cir. 2006), wherein the court reversed on other grounds, but in doing so, directed the ALJ on remand to consider the relevant factors to determine if jobs existed in significant numbers in connection with occupations totaling approximately 1500 jobs in the regional economy and 200,000 jobs in the national economy. *Id*. at 776-77.

As this Court has ruled in the past, given the imprecise nature of this analysis, this Court is unwilling to find that 43,000 represents an insignificant number of jobs. *See Rogers v. Astrue*, 312 Fed. Appx. 138, 141 (10th Cir. 2009) (testimony by vocational expert of 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability); *see also Fox v. Colvin*, 2015 WL 5178414, at *4 (W.D. Okla., Sept. 3, 2015) ("The *Rogers* [*v. Astrue*] decision came out the same year as *Raymond*, and that court implicitly found, as a matter of law, without engaging in a multi-factor analysis, that 11,000 jobs in the national economy is significant. The Court is persuaded by *Rogers* and finds that 32,000

14

utility tractor jobs in the national economy is significant."). Thus, even considering only the industrial cleaner job, the ALJ had substantial evidence to support his determination that there was a significant number of jobs for Claimant in the national economy.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 28th day of February, 2022.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE